32 C.C.P.A.(Patents)

Application of JACOBSON et al.

Patent Appeal No. 5012.

Court of Customs and Patent Appeals.
April 9, 1945.

Brown, Critchlow & Flick, of Pittsburgh, Pa. (Frank E. Foote and Fulton B. Flick, both of Pittsburgh Pa., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

Appellants here seek reversal of the decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of five claims, numbered respectively 2, 23, 24, 28, and 29, embraced in their joint application for patent for alleged "new and useful improvement in Combustible Gas Indicators."

Claims 2, 23, and 24 are for the apparatus; claims 28 and 29 for the method.

The subject matter is fairly illustrated by claims 2 and 28, which read:

"2. Apparatus for selective testing of combustible gases with different ignition temperatures including a detector filament in an electrical circuit, means for flowing the gas to be tested over the detector filament, electrical means including a battery and a rheostat for maintaining the detector filament at a temperature sufficient to ignite the gas to be tested having one ignition temperature, and means for switching additional electrical means into the circuit to change the temperature of the detector filament when testing for a gas having a different ignition temperature."

"28. The method of selectively testing the components of a mixture of inert gases, oxygen and several combustible constituents of different ignition temperature which comprises supplying said mixture to an electrically heated filament, applying to said filament successively predetermined different constant voltages to heat the filament successively to different temperatures corresponding to the ignition temperatures of said constituents, and measuring the rise in temperature of said filament caused by combustion of said constituents at each of said temperatures."

Claim 29 differs from claim 28 by, (1) calling for the electrically heated filament to be connected in a balanced circuit, and (2) for the application of predetermined constant voltages in such manner that the detector filament is heated to successively higher temperatures.

All the claims were rejected by the tribunals of the Patent Office as lacking invention over prior art, the following patents being cited as references:

Philip et al., 1,224,321, May 1, 1917.

Howe, 2,005,036, June 18, 1935.

Morgan et al., 2,057,246, October 13, 1936.

We take the following descriptive statement from the decision of the board:

"The disclosure relates to methods and apparatus whereby one or more components in a mixture of several combustible gases of different ignition temperature may be determined. It is pointed out that some gases have much higher ignition temperature than others and that this has been broadly recognized heretofore and fractional combustion employed but that in previous methods of fractional combustion the component to be measured is first completely burned out and then quantitatively determined by the volume contraction of the sample either directly or after absorption of its products of combustion. It is disclosed that the present method makes the determination at the time the fractional combustion is occurring by measuring in a flowing sample the rate of combustion or the heat evolved by the combustion per unit time and that this is done by observing a quantity which is a definite function of that rate, that is, the temperature of a body adjacent to the combustion space, the temperature of a catalyst or the electrical resistance of a filament placed inside the combustion chamber. It is further stated in the specification that fractional combustion in the past has always been done by complicated methods and apparatus involving elaborate steps and adjustments not adapted to operation on a flowing or readily replaceable gas sample.

"It is said to be applicants' general object to provide methods and apparatus for direct selective testing and quantitative determination of components in a mixture of combustible gases or vapors at the same time the combustion of the mixture is

carried out at a number of different temperatures. * * *"

The brief of the Solicitor for the Patent Office describes the structure disclosed by appellants' specification substantially as follows (numerals and page references being omitted, and explanatory words inserted in brackets):

"The appellants' application discloses a catalytic resistance element [referred to in claim 2 as the detector filament], which, in use is exposed to the gas to be tested, and which forms one element of a Wheatstone bridge, whose galvanometer serves to indicate changes in the resistance of the element as its temperature varies. A battery is connected across the bridge through a rheostat and a resistance element which may be short circuited by a switch. In use, the rheostat is adjusted to provide the standard voltage, and current is then caused to flow through [the detector] element, thus heating it to a predetermined temperature and causing it to ignite all components of the gas whose ignition point is below such temperature. The burning of these components changes the resistance of [the detector] element by an amount which is proportional to the percentage of such components present, and this change is indicated by the galvanometer, thus showing what percentage of the gas will ignite at or below the selected temperature. The initial temperature of [the detector] element may be varied by controlling the flow of current through it. The short circuiting of [the second stated] resistance [element] by [the] switch provides a means for varying this current and thus the switch permits the selection of either one of two predetermined temperatures."

The principal reference relied on is the patent to Philip et al. for a detector of combustible gases, which discloses an apparatus comprising resistance elements which form certain elements of a Wheatstone bridge, the elements, in use, being exposed to the gas to be tested. Those elements are heated by an electric current to ignite the gas and the combustible content is measured by a galvanometer in the same manner as in appellants' apparatus. The patent also discloses a rheostat which acts to vary the flow of the current thus regulating or affecting the temperature of the filaments.

The structural features of the other references pertinent to this controversy appear to be substantially identical with those of the Philip et al. patent.

In the brief and argument for appellants before us, some emphasis is placed upon the "selective" feature appearing in the introductory clauses of all the claims except 29.

Instances in which the introductory clause of a claim may be taken as a limitation on the claim are very rare. The general rule is well known to be to the contrary (see Deutsch et al. v. Ball, 22 C.C.P.A., Patents, 1322, 77 F.2d 930, and cases therein cited), and we discern no reason to justify an exception in this case.

Considering first the apparatus claims as illustrated by claim 2, supra, it appears to be conceded that everything named is old in the art down to, but not including, the last clause reading " * * * means for switching additional electrical means into the circuit to change the temperature of the detector filament when testing for a gas having a different ignition temperature." The latter part of the clause is functional, it being merely a statement of the purpose of switching additional current into the circuit. The idea expressed in the quoted limitation is present in the other apparatus claims, which do not materially differ so far as actual structure is concerned from claim 2, such additions as appear being functional statements.

It is insisted that the "switching" feature is not shown in the Philip et al. patent. The switching means upon which appellants rely is the switch referred to in the statement of the Solicitor for the Patent Office quoted above, by which the second resistance element named therein may be short circuited. Appellants, in effect, insist that this switching feature is an addition to the rheostat and battery disclosed by Philip et al. and mentioned in the early part of appellants' claim 2, and that a new and important element is thus added to the prior art.

The Solicitor for the Patent Office, summarizing the concurring views of the examiner and the board, contends that the rheostat disclosed by Philip et al., by which the flow of the current is varied so that it affects the temperature of the filament, of itself meets the "switching" limitation designated by appellants, saying inter alia:

"The Philip et al. patent does not show a means for inserting resistance other than the rheostat which is previously recited in

1014

claim 2, but this rheostat will perform the function recited and is fully equivalent to the rheostat and additional resistance 36 of the appellants. In other words, the appellants have merely divided their adjustable resistance into two parts, calling one part a rheostat and the other a "means for switching additional electrical means into the circuit," but the effect is exactly the same as that of a single rheostat. * * * "

Counsel for appellants have failed to convince us that the position thus taken by the tribunals of the Patent Office is wrong.

Appellants claim that by reason of the alleged improvements they have made possible the production of a readily portable device by which the ignition temperatures of different kinds of gases may be easily determined, as, for example, "whether combustible matter present in manhole or building atmospheres is due to leakage from gas lines or from tanks containing petroleum products," it being contended, in effect, that the prior art devices are not readily adaptable to such tests.

It may be conceded that such structural alterations or modification of the prior art as appellants have made do constitute a desirable improvement and that their device may be more conveniently applied in testing the ignition temperatures of different gases, but we can find no justification for disagreeing with the conclusion of the experts of the Patent Office to the effect that the changes do not present patentable subject matter.

The ultimate conclusion of the examiner upon this question was clearly foreshadowed in different interlocutory statements made during the prosecution of the application, and appellants had ample opportunity to present evidence if they believed his position relative to the technical phases of the different devices to be erroneous. None was presented, and appellants relied only upon argument to overcome the findings of the Patent Office experts in that regard.

Much of what has been said relative to the apparatus claims applies with equal force to the method claims. With respect to the latter appellants' brief asserts:

" * * * the core of the method lies in applying *to the detector* a *series* of *constant* voltages. This provides results not to be had by prior methods which involved applying a single constant *voltage across the bridge*." (Italics quoted.)

The brief then proceeds by comparing the method claims with the disclosures of the references (constant voltage and variation of the filament potential by reduction of resistance through the closing of appellants' switch being dwelt upon), and continues:

"For these reasons we believe and assert that the Philip et al. circuit was not intended to and could not be operated according to these claims, and that the patent wholly lacks the vitalizing limitation repeatedly emphasized above."

"The same thing applies to the patents to Howe and Morgan. * * * "

We are not convinced that the tribunals of the Patent Office erred in holding that appellants presented nothing patentable over the prior art in applying "a series of constant voltages" to their "detector filament." The following from the brief of the Solicitor for the Patent Office (again summarizing the concurring view of the examiner and the board) appears to us apt:

"Each of the references clearly contemplates that tests may be made on the same gases, as, for example the kiln gases of Howe, using different filament temperatures. Since these tests could not be made simultaneously they must necessarily be made successively; and this is all that is called for by claims 28 and 29. Whether the correlation of the results of the tests in the manner described in the application is patentable need not be considered, since claims 28 and 29 do not include this idea. These claims call broadly for steps which are fairly contemplated by the references."

The decision of the board is affirmed.

Affirmed.